1 | STEVE W. BERMAN (*pro hac vice*)
steve@hbsslaw.com
2 | HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
3 | Seattle, WA 98101
Telephone:  (206) 623-7292
4 | Facsimile:  (206) 623-0594

5 | MARTIS ANN ALEX (SBN 77903)
malex@labaton.com
6 | DANIEL R. LEATHERS (*pro hac vice*)
dleathers@labaton.com
7 | BRIAN R. MORRISON (*pro hac vice*)
bmorrison@labaton.com
8 | LABATON SUCHAROW LLP
140 Broadway
9 | New York, NY 10005
Telephone:  (212) 907-0700
10 | Facsimile:  (212) 818-0477

11 | *Attorneys for Plaintiffs*

12 | [Additional Counsel on Signature Page]

13 | **UNITED STATES DISTRICT COURT**

14 | **CENTRAL DISTRICT OF CALIFORNIA**

15 | **WESTERN DIVISION**

| | |
|---|---|
| RICHARD DRAEGER, STANLEY AND JANET NEILL, NEIL STEVENS, PATRICIA FLANNERY, HELEN CIANGIULLI, JUDITH HARR SHANE, AND STEVEN GREEN, on behalf of themselves and those similarly situated,<br><br>                                   Plaintiffs,<br><br>          v.<br><br>TOYOTA MOTOR SALES, U.S.A., INC.,<br><br>                                   Defendant. | No. 2:15-cv-09204-AB-MRW<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT TOYOTA MOTOR SALES, U.S.A., INC.'S MOTION TO DISMISS**<br><br>Date:      June 27, 2016<br>Time:      10:00 a.m.<br>Place:     Courtroom 4<br>Judge:    Hon. André Birotte Jr. |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ....................................................................................... 3

III.  ARGUMENT ............................................................................................ 6

    A.   Plaintiffs Allege "Injury-in-Fact" Sufficient to Confer Article III Standing ....................................................................................... 7

    B.   Plaintiffs Do Not Allege That They Received, Reviewed, or Relied upon the Owner's Manuals, Which in Any Event Do Not Disclose the Defect ...................................................................... 10

    C.   Plaintiffs Adequately Allege That Toyota Omitted Material Facts and Breached Its Duty to Disclose a Safety Defect ...................... 11

        1.   Toyota has a duty to disclose the Defect because it poses an unreasonable safety risk. ................................................ 11

        2.   Toyota also has a duty to disclose the lack of Auto-Off based on its exclusive knowledge thereof (*i.e.*, Toyota is in a superior position to know about the Defect and the safety concerns associated with it). ...................................... 14

        3.   Toyota has a duty to disclose the lack of Auto-Off based on Toyota's concealment of the defect. ........................... 17

    D.   Plaintiffs Adequately Plead Claims Under Each Prong of California's Unfair Competition Law ...................................... 18

    E.   Plaintiff Flannery Adequately Pleads a Claim for Relief Under Massachusetts Chapter 93A ............................................ 18

    F.   The Economic Loss Rule Does Not Apply ................................. 19

    G.   Plaintiffs Have Adequately Alleged Breaches of the Implied Warranty of Merchantability Under Massachusetts and New Jersey Law ........................................................................... 19

    H.   Plaintiffs' Claims for Unjust Enrichment Are Properly Pled in the Alternative Under California, Massachusetts, and New Jersey Law ....... 20

    I.   Plaintiffs' Request for Injunctive Relief Is Not Barred by Preemption or Primary Jurisdiction .......................................... 22

        1.   Plaintiffs' request for injunctive relief is not barred by conflict preemption. ........................................................ 22

        2.   Plaintiffs' requested relief is also not barred by the doctrine of primary jurisdiction. .......................................... 24

IV.  CONCLUSION ...................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
   2014 WL 4656608 (D. Mass. Sept. 12, 2014)........................................ 11

*In re Adobe Sys., Inc. Privacy Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014).................................................. 17

*Apodaca v. Whirlpool Corp.*,
   2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) .................................. 13, 14

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................ 21

*Asghari v. Volkswagen Grp. of Am., Inc.*,
   42 F. Supp. 3d 1306 (C.D. Cal. 2013)................................ 10, 12, 16, 18

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................................ 21

*Belville v. Ford Motor Co.*,
   13 F. Supp. 3d 528 (S.D. W. Va. 2014) ............................................... 24

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) .................................................................. 7

*Boysen v. Walgreen Co.*,
   2012 WL 2953069 (N.D. Cal. July 19, 2012) ........................................ 7

*In re Bridgestone/Firestone Inc., ATX, ATX II & Wilderness Tires
   Prods. Liab. Litig.*,
   153 F. Supp. 2d 935 (S.D. Ind. 2001) .................................................. 23

*Bruno v. Quten Research Inst., LLC*,
   280 F.R.D. 524 (C.D. Cal. 2011)....................................................... 9, 10

*Chamberlan v. Ford Motor Co.*,
   314 F. Supp. 2d 953 (N.D. Cal. 2004)....................................... 22, 23, 24

*Cholakyan v. Mercedes-Benz USA, LLC*,
   796 F. Supp. 2d 1220 (C.D. Cal. 2011) ................................................ 18

*Clapper v. Amnesty Int'l USA*,
    133 S. Ct. 1138 (2013)................................................................. 9

*Clark v. Time Warner Cable*,
    523 F.3d 1110 (9th Cir. 2008) .................................................... 25

*Coker v. DaimlerChrysler Corp.*,
    2004 WL 32676 (N.C. Super. Ct. Jan. 5, 2004), *aff'd*, 172 N.C. App.
    386 (N.C. Ct. App. 2005) ........................................................... 23

*Corson v. Toyota Motor Sales, U.S.A., Inc.*,
    2013 WL 10068136 (C.D. Cal. July 18, 2013) ........................... 18

*Cuviello v. City & Cty. of San Francisco*,
    940 F. Supp. 2d 1071 (N.D. Cal. 2013).......................................... 6

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2006) .................................................... 11

*Decker v. Mazda Motor of Am., Inc.*,
    2011 WL 5101705 (C.D. Cal. Oct. 24, 2011) ........................... 12

*Ehrlich v. BMW of N. Am., LLC*,
    801 F. Supp. 2d 908 (C.D. Cal. 2010)................................... 12, 17

*Eisen v. Porsche Cars N. Am., Inc.*,
    2012 WL 841019 (C.D. Cal. Feb. 22, 2012) .......................... 13, 14

*Elias v. Hewlett-Packard Co.*,
    2014 WL 493034 (N.D. Cal. Feb. 5, 2014)........................... 15, 17

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ...................................................... 7

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007)............................... *passim*

*Fernandes v. Havkin*,
    731 F. Supp. 2d 103 (D. Mass. 2010).......................................... 21

*Finigan-Mirisola v. DaimlerChrysler Corp.*,
    869 N.E.2d 632 (Mass. App. Ct. 2007) ...................................... 19

*First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*,
    717 F. Supp. 2d 156 (D. Mass. 2010).......................................... 14

*Fox v. F & J Gattozzi Corp.*,
  41 Mass. App. Ct. 581 (1996) ................................................................. 21

*Genovesi v. Nelson*,
  5 N.E.3d 571 (Mass. App. Ct. 2014) ....................................................... 20

*Glass v. BMW of N. Am., LLC*,
  2011 WL 6887721 (D.N.J. Dec. 29, 2011) ............................................. 20

*Gray v. Toyota Motor Sales, U.S.A.*,
  2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ...................................... 15, 16

*Grodzitsky v. Am. Honda Motor Co., Inc.*,
  2013 WL 2631326 (C.D. Cal. June 12, 2013) .......................................... 10

*Guido v. L'Oreal, USA, Inc.*,
  2013 WL 454861 (C.D. Cal. Feb. 6, 2013) ............................................. 25

*Harris v. Las Vegas Sands L.L.C.*,
  2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) ........................................... 9

*Henderson v. Gruma Corp.*,
  2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ............................................ 9

*Herron v. Best Buy Co.*,
  924 F. Supp. 2d 1161 (E.D. Cal. 2013) .................................................. 17

*Hofmann v. Fifth Generation, Inc.*,
  2015 WL 5440330 (S.D. Cal. Mar. 18, 2015) .......................................... 17

*Iannacchino v. Ford Motor Co.*,
  451 Mass. 623 (2008) ....................................................................... 18, 20

*Johnson v. Harley-Davidson Motor Co. Group, LLC*,
  285 F.R.D. 573 (E.D. Cal. 2012) ............................................................ 14

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004) ......................................................... 22

*Kearney v. Hyundai Motor Am.*,
  2010 WL 8251077 (C.D. Cal. Dec. 17, 2010) ..................................... 12, 13

*Keegan v. Am. Honda Motor Co., Inc.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012) ........................................ 11, 12, 20

*Kent v. DaimlerChrysler Corp.*,
   200 F. Supp. 2d 1208 (N.D. Cal. 2002)..................................................... 24

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ............................................................................... 9

*Lass v. Bank of Am., N.A.*,
   695 F.3d 129 (1st Cir. 2012) .................................................................... 21

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   992 F. Supp. 2d 962 (C.D. Cal. 2014)........................................................ 8

*Lilly v. Ford*,
   2002 WL 84603 (N.D. Ill. Jan. 22, 2002) ............................................... 23

*Madenlian v. Flax USA Inc.*,
   2014 WL 7723578 (C.D. Cal. Mar. 31, 2014) ......................................... 10

*Maloney v. Indymac Mortg. Servs.*,
   2014 WL 6453777 (C.D. Cal. Nov. 17, 2014) ......................................... 21

*Maniscalco v. Brother Int'l Corp. (USA)*,
   627 F. Supp. 2d 494 (D.N.J. 2009).......................................................... 21

*Marsikian v. Mercedes Benz USA, LLC*,
   2009 WL 8379784 (C.D. Cal. May 4, 2009).................................... *passim*

*Mickens v. Ford Motor Co.*,
   900 F. Supp. 2d 427 (D.N.J. 2012)............................................................ 9

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014)........................................... 15, 16, 20

*In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*,
   618 F. Supp. 2d 96 (D. Mass. May 26, 2009) ......................................... 11

*NuCal Foods, Inc. v. Quality Egg LLC*,
   918 F. Supp. 2d 1023 (E.D. Cal. 2013) ................................................... 19

*Philips v. Ford Motor Co.*,
   2016 WL 693283 (N.D. Cal. Feb. 22, 2016)........................................... 25

*Rhynes v. Stryker Corp.*,
   2011 WL 2149095 (N.D. Cal. May 31, 2011) ......................................... 21

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) ........................................................................................ 19

*Rule v. Fort Dodge Animal Health, Inc.*,
   604 F. Supp. 2d 288 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir.
   2010) ..................................................................................................................... 9

*Sherwin-Williams Co. v. JJT, Inc.*,
   2014 WL 2587483 (S.D. Cal. June 10, 2014) ...................................................... 19

*Solarz v. DaimlerChrysler Corp.*,
   2002 WL 452218 (Pa. Com. Pl. Mar. 13, 2002) ................................................. 25

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) .............................................................................. 7

*Szulik v. State Street Bank & Trust Co.*,
   935 F. Supp. 2d 240 (D. Mass. 2013) ................................................................. 21

*Tait v. BSH Home Appliances Corp.*,
   2011 WL 3941387 (C.D. Cal. Aug. 31, 2011) .................................................... 10

*Taragan v. Nissan N. Am., Inc.*,
   2013 WL 3157918 (N.D. Cal. June 20, 2013) ...................................................... 8

*In re Toyota Corp. Unintended Acceleration Mktg., Sales Practices,
   and Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010)....................................................... *passim*

*In re Toyota Motor Corp.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ................................................................ 8

*Trazo v. Nestlé USA, Inc.*,
   113 F. Supp. 3d 1047 (N.D. Cal. 2015)............................................................... 21

*Vieira v. First Am. Title Ins. Co.*,
   668 F. Supp. 2d 282 (D. Mass. 2009)................................................................. 21

*Whitson v. Bumbo*,
   2009 WL 1515597 (N.D. Cal. April 16, 2009) .................................................... 8

*Williams v. Yamaha Motor Corp., U.S.A.*,
   106 F. Supp. 3d 1101 (C.D. Cal. 2015)............................................................... 14

*Willis v. Buffalo Pumps, Inc.*,
   34 F. Supp. 3d 1117 (S.D. Cal. 2014) .................................................................... 11

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ............................................................................... 17

*Wyler Summit P'Ship v. Turner Broadcasting Sys., Inc.*,
   135 F.3d 658 (9th Cir. 1998) ................................................................................... 6

## Other Authorities

Federal Motor Vehicle Safety Standards; Theft Protection and Rollaway
   Prevention, 76 Fed. Reg. 77183, 77184, 77193-95 (Dec. 12, 2011) ......................... 5

# I.   INTRODUCTION

A college professor in Queens, New York, parked her Lexus EX 350 in her garage and woke up the next morning with permanent brain damage caused by carbon monoxide poisoning.  Her partner was dead.

A couple in Greenville, South Carolina, parked their Toyota Avalon in their garage, and never showed up at church the next day.  Police later found them at home barely breathing, and despite emergency medical treatment for carbon monoxide poisoning, the couple died several days later.

A father in Issaquah, Washington, parked the family Toyota Sienna minivan in the garage, and the family of six was later rushed to the hospital for emergency treatment for carbon monoxide poisoning.  Three of the responding firefighters required medical attention, and the seventeen-month-old baby required three days of intensive treatment in a hyperbaric chamber.

These tragedies, which are described in detail in Plaintiffs' First Amended Class Action Complaint ("FAC"),[1] share a common thread:  the drivers drove their Toyota vehicles into their garages, parked the cars, removed the Keyless Fobs, and entered their homes.  But on each occasion, the driver was unaware that despite parking the vehicle and removing the Keyless Fob, the engine continued to run, emitting deadly carbon monoxide into their home.

These tragedies were avoidable, but Defendant Toyota Motor Sales, U.S.A., Inc. ("Toyota") failed to institute the appropriate safeguard – an automatic engine shutoff – to ensure that an unattended vehicle's engine does not continue to emit deadly carbon monoxide after the car is parked ("Auto-Off").  Toyota also failed to disclose the safety risks associated with *a Keyless Fob system designed without Auto-Off* (the "Defect") to consumers, who reasonably believed that as with a traditional physical key, if the car was parked and the Fob removed, the engine would not continue to run.

---

[1] *See* ¶ 18.  Except where otherwise noted, references to "¶__" are to paragraphs in the First Amended Class Action Complaint (Dkt. No. 19).

As detailed in the FAC, Toyota knew about the safety risks associated with its Keyless Fob system that lacks Auto-Off.  But Toyota chose not to fix the Defect or disclose its existence to consumers.  Plaintiffs each allege that he or she purchased or leased a Keyless Fob vehicle from Toyota that he or she otherwise would not have purchased or leased, or paid more for it than he or she otherwise would have paid, if Toyota had disclosed the Defect.  Plaintiffs bring various state law claims seeking economic damages for overpayments, injunctive relief to stop the ongoing deceptive marketing and to remedy the dangerous defect, and declaratory relief to notify class members about the defective nature of the vehicles.

Now, in its Motion to Dismiss, Toyota argues that Plaintiffs' claims should be dismissed because their injuries are too speculative or hypothetical to support standing.  Toyota also argues that Plaintiffs fail to allege omissions of material facts or a duty to disclose those facts.  It further argues that Plaintiffs cannot state:  (i) tort claims in light of the "economic loss rule"; (ii) an implied warranty claim; or (iii) an unjust enrichment claim.  Further still, it argues that Plaintiffs' request for injunctive relief is preempted or barred by the doctrine of primary jurisdiction.  Toyota's motion, however, ignores key decisions from California district courts rejecting these arguments, and turns a blind eye to the safety risks posed by the Defect.

*First*, Plaintiffs sufficiently allege injury-in-fact because they already suffered economic loss flowing from a safety defect, and they actually experienced the Defect.  Thus, Plaintiffs have Article III standing.  Toyota's reliance on cases where the plaintiffs did not allege any manifestation of the defect or any actual injury (physical or economic) is therefore unavailing.  To be sure, the FAC also details a number of avoidable deaths and injuries.  Contrary to Toyota's view, and unlike in cases Toyota cites, the injuries Plaintiffs allege here are neither hypothetical nor speculative.

*Second*, Plaintiffs adequately allege that Toyota had a duty to disclose the Defect.  The duty to disclose exists here because the lack of Auto-Off poses a genuine safety risk, because Toyota had exclusive or superior knowledge of this safety Defect,

1   and because Toyota concealed the Defect.  Reasonable consumers would expect

2   Toyota to guarantee against unreasonable safety risks like those posed by the Defect,

3   and Plaintiffs amply allege that they were unaware of the Defect.

4   *Third*, the "economic loss rule" cannot bar Plaintiffs' tort claims since the

5   claims stem from a breach of duty independent of any contractual promise.  *Fourth*,

6   the Court should not dismiss Plaintiffs' implied warranty claims given the serious

7   safety risks associated with Keyless Fobs and the deference afforded to Plaintiffs'

8   factual allegations at the pleadings stage.  *Fifth*, Plaintiffs' unjust enrichment claims

9   are properly pled in the alternative, as permitted by the Ninth Circuit.

10  *Finally*, the preemption and primary jurisdiction doctrines do not bar Plaintiffs'

11  request for injunctive relief.  Toyota made the same preemption and primary

12  jurisdiction arguments in *In re Toyota Corp. Unintended Acceleration Marketing,*

13  *Sales Practices, and Products Liability Litigation* ("*Unintended Acceleration MDL*"),

14  754 F. Supp. 2d 1145 (C.D. Cal. 2010), a case that Toyota neglects to mention, and for

15  good reason.  In the *Unintended Acceleration MDL*, the Court rejected these same

16  arguments.  In essence, Toyota fails to meet its burden of showing an "actual" conflict

17  between the requested relief and the National Traffic and Motor Vehicle Safety Act of

18  1966 (the "Safety Act"), given the presumption against preemption in motor vehicle

19  safety cases.  That there "might" be a conflict between the requested relief and federal

20  law at some future point is insufficient to warrant dismissal on preemption grounds.

21  The primary jurisdiction argument fares no better because Plaintiffs' claims are within

22  "the conventional competence of the courts" and require no specialized consideration

23  by the National Highway Transportation Safety Administration ("NHTSA").

24  The Court should deny Toyota's motion for the reasons discussed below.

25  ## II.   BACKGROUND

26  The Keyless Fobs are marketed as the ultimate driving convenience.  Drivers

27  can keep the Fobs in their pockets or bags and can start the car by pressing a button on

28  the dashboard without having to fumble for a traditional key.  *See* ¶ 2.

However, this convenience has resulted in deadly consequences.  With traditional physical keys, once a driver removed the key from the ignition switch, the engine could no longer operate.  ¶ 3.  Drivers knew that if they removed the key from the vehicle, the engine was off.  But Keyless Fobs operate very differently.  Unlike with traditional keys, the Keyless Fob has nothing to do with turning off the engine.  ¶ 6.  Engines no longer turn off simply because the car is parked and the Keyless Fob is removed from the vehicle.  *Id.*  For Plaintiffs' vehicles, as with other vehicles listed in Exhibit 1 to the FAC ("Affected Vehicles"), the driver can stop the vehicle, put it in park, and exit with the Fob, but the engine can continue to run until the gas tank is empty, no matter how far away the driver goes from the car, and no matter how long the engine is running.  *Id.*

Keyless Fobs are often offered as part of an "upgrade" or "technology" package that costs consumers additional money.  ¶ 8.  In vehicles that come with a Keyless Fob as standard equipment, the cost of the hardware and technology is built into the vehicle price.  In either case, Plaintiffs and other consumers pay additional money for the Keyless Fobs.  *Id.*  But this added convenience comes at the expense of safety because Toyota has failed to institute Auto-Off on the Affected Vehicles.  ¶ 12.

The Complaint references *at least* fourteen documented deaths and many more serious injuries (including permanent brain damage) as a result of the Defect – all from carbon monoxide poisoning, and all of which would have been prevented if the vehicles had an automatic shut-off system to prevent the vehicle's engine from running unabated after the driver exits the vehicle with the Keyless Fob.[2]  ¶ 17.

While NHTSA recognized over four years ago there are "clear safety problem[s]" resulting from Keyless Fobs, particularly because they operate differently

---

[2] Plaintiffs' counsel have learned of at least five more deaths since filing the Complaint in November 2015, bringing the total number of avoidable deaths to nineteen.  If the Court requests or requires further allegations about the safety hazard posed by the Defect, Plaintiffs' counsel could and would detail the circumstances of these additional deaths.

than physical keys, NHTSA has not enacted any regulation addressing this safety problem.  *See* Federal Motor Vehicle Safety Standards; Theft Protection and Rollaway Prevention, 76 Fed. Reg. 77183, 77184, 77195 (Dec. 12, 2011).  In December 2011, NHTSA considered requiring a one-second 85 decibel alert that would sound when a driver removes the Keyless Fob from a vehicle still running, but questioned whether one second was long enough and whether voice alerts would be more effective.  *Id.* at 77193.  NHTSA proposed amending Federal Motor Vehicle Safety Standard ("FMVSS") 114 to require the alert, and requested comments by March 22, 2012.

NHTSA also considered Auto-Off but acknowledged that it was unable to decide how long to allow the engine to run after the Keyless Fob is removed before the engine automatically shuts off.  *Id.* at 77194-195.  NHTSA requested comments.  More than four years and nineteen avoidable deaths later, NHTSA has not acted.

Since the time that Toyota first marketed the Affected Vehicles, and at the time Plaintiffs purchased or leased the Affected Vehicles, the Keyless Fob system lacked Auto-Off and posed a serious risk of carbon monoxide poisoning.  ¶ 228.  At the same time, Toyota was in a superior position to know about the lack of Auto-Off in its Affected Vehicles and the unreasonable safety hazard that it created.  ¶¶ 227-28.  As alleged in the FAC, Toyota's superior knowledge of the Defect arises through a variety of sources that include select news reports, recalls, patent applications, personal injury lawsuits, NHTSA complaints, non-binding NHTSA proposals, and Toyota's partial implementation of Auto-Off.  ¶¶ 178-225.  In fact, Toyota installed an automatic shut-off system for many of its remote-start vehicles to shut off the engine if the vehicle is left running in pre-start mode in order to limit deadly carbon monoxide emissions.  ¶¶ 222-25.  Toyota failed to disclose the lack of Auto-Off and related safety risks to consumers, inducing consumers to purchase or lease one of the Affected Vehicles and to pay a premium price in the process.  ¶ 228.

Plaintiffs purchased or leased various Toyota vehicles equipped with Keyless Fobs, not knowing that their Affected Vehicles lacked Auto-Off.  ¶¶ 41, 56, 71, 86,

101, 116, 131.  Prior to purchasing or leasing the vehicles, they reviewed Toyota pre-sale materials, but none of those pre-sale materials warned them that their vehicles lack Auto-Off or pose a real safety risk.  ¶¶ 47, 62, 77, 92, 107, 122, 137.  Although Plaintiffs themselves have been fortunate enough not to suffer carbon monoxide poisoning, they nevertheless each have experienced the Defect – they each have parked their vehicles, removed the Keyless Fob, walked away, and later discovered the vehicles' engines were still running.  ¶¶ 49, 64, 79, 94, 109, 124, 139.  Plaintiffs would not have purchased or leased the vehicles, or would have paid less for them, had they known of the Defect.  ¶¶ 54, 69, 84, 99, 114, 129, 144.

### III.   ARGUMENT

Toyota's Motion to Dismiss Plaintiffs' FAC fails as a matter of law, and the Court should deny the motion in its entirety.  A motion to dismiss challenges the legal sufficiency of the claims alleged.  While the complaint must plead enough facts to render the claims plausible on their face, a claim has plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Cuviello v. City & Cty. of San Francisco*, 940 F. Supp. 2d 1071, 1079 (N.D. Cal. 2013).[3]  "On a motion to dismiss, all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party."  *Wyler Summit P'Ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

Additionally, under Federal Rule of Civil Procedure 9(b), the fraudulent omission claims asserted by Plaintiffs "can succeed without the same level of specificity required by a normal fraud claim."  *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1189 (Rule 9(b) requirements relaxed for fraudulent omission claims "because '[r]equiring a plaintiff to identify (or suffer dismissal) the precise time,

---

[3] Unless otherwise indicated, all internal citations and quotation marks are omitted.

place, and content of an event that (by definition) did not occur would effectively gut state laws prohibiting fraud-by-omission'").

As explained more fully below, Plaintiffs have alleged sufficient factual allegations that "plausibly suggest an entitlement to relief."  *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).[4]

**A.    Plaintiffs Allege "Injury-in-Fact" Sufficient to Confer Article III Standing**

Toyota's argument that Plaintiffs have not sufficiently alleged injury-in-fact to confer Article III standing is wholly without merit, particularly at this stage of the litigation where "general factual allegations of injury resulting from the defendant's conduct may suffice."  *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1160.

Plaintiffs adequately allege economic injury flowing from a genuine safety defect.  In the *Unintended Acceleration MDL*, this Court held that "overpayment, loss in value, or loss of usefulness is sufficient to confer standing."  754 F. Supp. 2d at 1162.  Here, too, Plaintiffs squarely allege that they overpaid for the Affected Vehicles and that the cars have lost value as a result of the Defect.  *See* ¶¶ 39, 240, 286, 297, 298.  This is not a products liability case and, notwithstanding Toyota's suggestion to the contrary, Plaintiffs need not allege that they personally suffered physical injuries.  Toyota cites to *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), and *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012), but neither case helps Toyota.  In each of those cases, *unlike the case at hand*, the plaintiffs failed to allege that anyone had been injured by the defect.  *See Birdsong*, 590 F.3d at 961 (concluding that alleged diminution in value did not constitute injury because it rested on hypothetical risk of harm that never occurred to plaintiffs or anyone else); *Boysen*, 2012 WL 2953069, at *7.

---

[4] Moreover, dismissal "without leave to amend is not appropriate unless it is clear … that the complaint could not be saved by amendment."  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also* Fed. R. Civ. P. 15(a)(2).  Plaintiffs respectfully request leave to amend if necessary.

1    Toyota contends that Plaintiffs' concerns about the risk of carbon monoxide

2    poisoning are "speculative" and "hypothetical," and therefore insufficient to establish

3    standing.  Toyota is wrong.  As evidenced by *at least* fourteen documented deaths and

4    scores of devastating injuries that continue to mount, the risk of carbon monoxide

5    poisoning from the Affected Vehicles realistically threatens Plaintiffs and others.

6    Toyota relies on two unpublished decisions from cases where the plaintiffs did

7    not allege a safety defect or experience the alleged defect.  *See Taragan v. Nissan N.*

8    *Am., Inc.*, 2013 WL 3157918, at *4 (N.D. Cal. June 20, 2013); *Whitson v. Bumbo*,

9    2009 WL 1515597, at *4 (N.D. Cal. April 16, 2009).  But here, Plaintiffs allege a

10   safety Defect and they have experienced a manifestation of the Defect – they found

11   their vehicles running despite parking the vehicles and removing the Fobs.  *See, e.g.*,

12   ¶¶ 49-52.  Moreover, to the extent *Whitson* (or any of the cited cases) hold that

13   standing cannot be established absent a manifestation of the defect, this Court has

14   emphatically disagreed.  *See Unintended Acceleration MDL*, 754 F. Supp. 2d at 1164.

15   Indeed there are multiple grounds for standing here, since Plaintiffs thoroughly detail a

16   safety Defect supporting economic losses; *and* they experienced a manifestation of the

17   Defect; *and* they are concerned about the increased risks of carbon monoxide

18   poisoning in the future.  *See id.*, 754 F. Supp. 2d at 1163 ("An injury-in-fact may

19   simply be the fear or anxiety of future harm.").

20   Toyota's reliance on *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp.

21   962 (C.D. Cal. 2014) is equally misplaced.  In that case, the plaintiffs did not allege

22   that anyone experienced a problem with the braking system at issue or that the defect

23   caused any injuries.  *Id.* at 967-68.  The theoretical defect in *Lee* is a far cry from the

24   Defect in this case that has resulted in at least fourteen deaths and many more serious

25   injuries.  As the Court explained in *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152,

26   1166 (C.D. Cal. 2011), "[a]s long as [the plaintiffs] do not simply allege that their

27   Toyota vehicles are 'defective,' but rather offer detailed, non-conclusory factual

28

allegations of the product defect, the economic loss injury flows from the plausibly alleged defect at the pleadings stage."

Plaintiffs also have standing to pursue injunctive relief on behalf of consumers in the proposed class, since Plaintiffs allege that they were injured and that Defendant's conduct continues to threaten consumers. *See Henderson v. Gruma Corp.*, 2011 WL 1362188, at *2-3 (C.D. Cal. Apr. 11, 2011); *see also Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142, at *3-4 (C.D. Cal. Aug. 16, 2013). This case is different from *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1148 (2013), where the plaintiffs only alleged a "highly attenuated chain of possibilities" which failed to satisfy "the requirement that threatened injury must be certainly impending," and did not allege they had actually been injured. The plaintiffs in *Clapper* pled only that they *suspected* that surveillance interceptions of human rights organizations *might* have occurred, that their client communications may be intercepted in the future, and that they may then have to incur expenses to protect confidentiality. *Id.* But here, in addition to Plaintiffs' actual economic injuries, the FAC details Plaintiffs' "near-miss" experiences and, more broadly, describes the dangerous consequences that already have resulted from the Defect. *See, e.g.*, ¶¶ 50, 52.[5]

Finally, Toyota argues that the FAC must be dismissed as to all Affected Vehicles other than the ones Plaintiffs purchased or leased, though Plaintiffs allege that each one of those vehicles suffers from precisely the same Defect. ¶ 6. Toyota thus implies that it cannot be held accountable for its material omissions unless Plaintiffs present over 250 class representatives to bring these claims. This illogical argument is properly addressed in a motion for class certification. *See Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) ("District courts in

---

[5] Because Plaintiffs have sufficiently alleged injury-in-fact for Article III standing, they also have standing under the various state consumer protection laws. *See, e.g.*, *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 324 (2011); *Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 304 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 446 (D.N.J. 2012).

California routinely hold that the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."); *Grodzitsky v. Am. Honda Motor Co., Inc.*, 2013 WL 2631326, at *4 (C.D. Cal. June 12, 2013) (rejecting same argument in auto defect class action as "ill-suited to a motion to dismiss," relying on *Bruno* and explaining that argument "is better made at the class certification stage").[6]

## B. Plaintiffs Do Not Allege That They Received, Reviewed, or Relied upon the Owner's Manuals, Which in Any Event Do Not Disclose the Defect

Toyota reasons that the owner's manuals disclose the material risks associated with the lack of Auto-Off. *See* MTD at 4. This line of reasoning goes astray for two main reasons. *First*, the cited owner's manuals are not contained in the FAC, and they are not the proper subject of judicial notice. *See* Pls.' Opp'n to Toyota's Req. for Judicial Notice. *Second*, the owner's manuals are not pre-sale marketing materials; an objectively reasonable consumer would not review the referenced manuals – which range in length between 622 and 886 pages – prior to purchase.[7] *See Tait v. BSH Home Appliances Corp.*, 2011 WL 3941387, at *2-3 (C.D. Cal. Aug. 31, 2011) (rejecting argument that product manuals disclosed the alleged defect, since the manuals were provided to consumers after they bought the products); *see also Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1328 (C.D. Cal. 2013).

In any event, the so-called "warning" in the owner's manuals makes no mention of the Defect. That warning is irrelevant to Plaintiffs' core claim that Toyota did not disclose that the vehicles lack Auto-Off, which poses a serious safety risk.

---

[6] Although some cases may reach a different conclusion, this Court typically recognizes that a plaintiff has standing to assert claims on behalf of putative class members who purchase similar products from the defendant and allege similar injuries. *See Madenlian v. Flax USA Inc.*, 2014 WL 7723578, at *6 (C.D. Cal. Mar. 31, 2014).

[7] Toyota fails to explain in its Request for Judicial Notice that the owner's manuals are only available for download on the "Toyota Owner's Center" and the "Lexus Drivers" websites – websites designed specifically for *current* Toyota and Lexus owners and lessees.

**C.     Plaintiffs Adequately Allege That Toyota Omitted Material Facts and Breached Its Duty to Disclose a Safety Defect**

In a nondisclosure case like this one, the plaintiff can state a cause of action when the defendant has a duty to disclose an alleged defect.  *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1094-95 (N.D. Cal. 2007); *accord In re Neurontin Mktg., Sales Practices & Prods. Liab. Litig.*, 618 F. Supp. 2d 96, 109 (D. Mass. May 26, 2009).  In California, a manufacturer generally has a duty to disclose a safety defect.  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 836 (2006); *see also Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 941 (C.D. Cal. 2012).  Moreover, a duty to disclose arises in at least one of four circumstances:  "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact."  *Falk*, 496 F. Supp. 2d at 1095 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)); *see also AcBel Polytech, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 2014 WL 4656608, at *10 (D. Mass. Sept. 12, 2014) (recognizing a duty to disclose based on "superior knowledge" or facts that are basic to a transaction).  Here, Plaintiffs allege that the Defect poses a deadly safety hazard, that Toyota had exclusive/superior knowledge of the Defect, that Toyota concealed the Defect, and that the Defect was unknown to Plaintiffs at the time of their purchase or lease of Affected Vehicles.

**1.     Toyota has a duty to disclose the Defect because it poses an unreasonable safety risk.**

"[T]he Ninth Circuit has recognized that California law imposes on manufacturers a general duty to disclose defects in their products relating to safety issues."  *Willis v. Buffalo Pumps, Inc.*, 34 F. Supp. 3d 1117, 1132 (S.D. Cal. 2014).  In particular, defendants are "under a duty to disclose a known defect in a consumer product when there are safety concerns associated with the product's use."  *Keegan*,

838 F. Supp. 2d at 941; *see also Kearney v. Hyundai Motor Am.*, 2010 WL 8251077, at *6-7 (C.D. Cal. Dec. 17, 2010); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010); *Falk*, 496 F. Supp. 2d at 1094. That is, where a plaintiff alleges a safety defect, he or she sufficiently pleads a duty to disclose for purposes of California's consumer protection statutes. *See Asghari*, 42 F. Supp. 3d at 1330-31; *see also Keegan*, 838 F. Supp. 2d at 944; *Kearney*, 2010 WL 8251077, at *6-7; *Marsikian v. Mercedes Benz USA, LLC*, 2009 WL 8379784, at *6 (C.D. Cal. May 4, 2009). In this case, Plaintiffs allege that Toyota failed to disclose a safety defect in the design of its Keyless Fob system. According to the FAC, Toyota adopted a Keyless Fob system that lacks the adequate safeguard of an automatic engine shutoff to ensure that the vehicle's engine does not continue to run unabated, emitting deadly carbon monoxide. ¶¶ 12-13. The Affected Vehicles have a dangerous propensity to cause carbon monoxide poisoning, creating an undue risk of injury and death. ¶¶ 37, 161. The Defect exists because, without Auto-Off, the Affected Vehicle can emit dangerous levels of carbon monoxide. ¶ 174. Affected Vehicles allow colorless and odorless carbon monoxide – the silent killer – to be emitted continually and unabated after the car is parked and the driver exits the vehicle. ¶ 28. Those continuous emissions accumulate, especially in enclosed environments, and are dangerous to human health and potentially fatal. *Id.*

Since Toyota has "a duty to disclose facts concerning safety issues," *Kearney*, 2010 WL 8251077, at *6, and since the alleged safety issues are certainly material to a reasonable consumer, Plaintiffs sufficiently plead a material breach of the duty to disclose for purposes of California's consumer protection statutes.

Toyota contends that Plaintiffs have not alleged that consumers expected that their vehicles would have an Auto-Off feature, and therefore, they were not likely to be deceived by non-disclosure of the alleged defect. MTD at 13. Importantly, "the average consumer would expect the manufacturer to guarantee against unreasonable safety risks." *Decker v. Mazda Motor of Am., Inc.*, 2011 WL 5101705, at *4 (C.D.

Cal. Oct. 24, 2011); *see also Apodaca v. Whirlpool Corp.*, 2013 WL 6477821, at *7 (C.D. Cal. Nov. 8, 2013) (same).  In any event, Toyota reads the pleadings too narrowly.  Plaintiffs do allege that reasonable consumers expect that Affected Vehicles are safe and that the engines eventually turn off after the driver removes the Keyless Fob for a sufficient distance or period of time.  ¶¶ 4, 12-15, 27, 36, 256, 257, 282, 297.  According to the pleadings, Toyota eliminated the physical and psychological connection between the Keyless Fob and the Affected Vehicles.  ¶¶ 12-13.  Considering human factors analyses, reasonable consumers do not fully appreciate that the Keyless Fob plays no role in turning off the engine regardless of the distance or time for which the Fob is removed from the vehicle.  ¶¶ 13-16.  Toyota ignored these human factors in designing its Keyless Fob system.  ¶¶ 168-73.

Plaintiffs further allege that they were not aware at the time they purchased the Affected Vehicles that the vehicles lacked Auto-Off and thereby posed a serious safety risk.  ¶¶ 41, 47, 51, 56, 62, 66, 71, 77, 81, 86, 92, 96, 101, 107, 111, 116, 122, 126, 131, 137, 141.[8]  Had Plaintiffs known this, they allege they would not have purchased the Affected Vehicles or paid as much for them.  ¶¶ 36, 68, 83, 98, 113, 128, 143.  Therefore, the alleged safety defect is material.  *See Falk*, 496 F. Supp. 2d at 1096 (plaintiffs adequately alleged that reasonable consumers would view defective speedometer as material; had they known of it, they would not have paid full price).  At bottom, Plaintiffs' allegations that Toyota failed to disclose a safety defect suffice to show that members of the public are likely to be deceived under a reasonable consumer standard.  *See Kearney*, 2010 WL 8251077, at *7.

Toyota again argues that Plaintiffs' safety concerns are too speculative, analogizing this case to *Eisen v. Porsche Cars N. Am., Inc.*, 2012 WL 841019, at *4 (C.D. Cal. Feb. 22, 2012) (mere risk of getting stranded on roadside is too speculative

---

[8]  Plaintiffs expected their Affected Vehicles to turn off automatically at some point after removing the Keyless Fob from the vehicle; they were unaware that their cars still required Auto-Off technology for that to happen.

to amount to a real safety issue). MTD at 12-13. The analogy to *Eisen* is flimsy. Plaintiffs themselves do not need to suffer physical injuries or death in order to successfully plead an unreasonable safety risk. *See Williams v. Yamaha Motor Corp., U.S.A.*, 106 F. Supp. 3d 1101, 1109 (C.D. Cal. 2015). To establish a duty to disclose based on a safety issue, the complaint may allege *either* an instance of physical injury *or* a sufficient nexus between the alleged defect and safety issue. *See id.* at 1112; *see also Apodaca*, 2013 WL 6477821, at *9; *Marsikian*, 2009 WL 8379784, at *6-7. The safety concerns here are all too real, as Toyota knows from the various instances of personal injury alleged in the pleadings. *See* ¶¶ 178-82, 193-201. Moreover, Plaintiffs allege a sufficient nexus between the Defect (a Keyless Fob system designed in a manner that the engine continues to run indefinitely after the Fob is removed) and the safety issue (carbon monoxide poisoning from the running engine).

Thus, Plaintiffs sufficiently plead that Toyota omitted material facts – *i.e.*, a defect posing genuine safety concerns, which supports a duty to disclose.

### 2. Toyota also has a duty to disclose the lack of Auto-Off based on its exclusive knowledge thereof (*i.e.*, Toyota is in a superior position to know about the Defect and the safety concerns associated with it).

A defendant has a duty to disclose when it has exclusive knowledge of material facts not known to the plaintiffs, *i.e.*, when defendant is in a superior position to know such facts. *See*, *e.g.*, *Falk*, 496 F. Supp. 2d at 1094-95; *see also Marsikian*, 2009 WL 8379784, at *6; *accord First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 717 F. Supp. 2d 156, 162 (D. Mass. 2010) ("[Defendant's] position of 'superior knowledge' with respect to the plaintiff also triggered a duty to disclose."). The "exclusive knowledge" standard is not construed literally. For example, in *Johnson v. Harley-Davidson Motor Co. Group, LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012), the defendants argued that a "duty to disclose even a known, material fact does not exist unless the defendant has exclusive knowledge of that fact." But *Johnson* explained that "courts do not apply 'exclusivity' with such rigidity. Rather, exclusivity is

analyzed in part by examining whether the defendant had 'superior' knowledge…."[9] And the district courts in *In re MyFord Touch Consumer Litigation*, *Elias v. Hewlett-Packard Co.*, *Falk*, and *Marsikian* have said the same.[10]

Here, Plaintiffs allege that Toyota has a duty to disclose the Defect based on its exclusive knowledge thereof.  ¶¶ 227-28.  In other words, Toyota is in a superior position to know about the lack of Auto-Off and related safety concerns.  Toyota's knowledge arises at least through:  (1) certain news reports of injuries and deaths from Keyless Fob vehicles that lack Auto-Off (¶¶ 178-82); (2) recalls of similar Keyless Fob vehicles that lack an Auto-Off mechanism (¶¶ 183-86); (3) patent applications covering Auto-Off systems (¶¶ 187-92); (4) personal injury lawsuit filings for Keyless Fob vehicles that lack Auto-Off (¶¶ 193-99); (5) consumer complaints filed with NHTSA regarding Keyless Fob vehicles (¶¶ 200-01); (6) review of non-binding NHTSA suggestions (¶¶ 202-06);[11] and (7) Toyota's partial implementation of Auto-Off in remote-start applications (¶¶ 222-25).[12]

Toyota argues that anyone who drives an Affected Vehicle knows that the engine must be turned off using the 'start/stop' button.  *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *9 (C.D. Cal. Jan. 23, 2012).  But this is a straw-man argument.  Of course pressing the 'start/stop' button can turn off the engine.  Yet, that

---

[9] *Id*. ("Since Defendant was in a **superior position** to know of its defective engines, Plaintiffs properly allege that Defendant had exclusive knowledge of material facts not known to Plaintiffs.") (emphasis added).

[10] *In re MyFord Touch Consumer Litig*., 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014); *Elias v. Hewlett-Packard Co*., 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014) ("*Elias II*"); *Falk*, 496 F. Supp. 2d at 1096-97; *Marsikian*, 2009 WL 8379784, at *6.

[11] On December 12, 2011, NHTSA published a Notice of Proposed Rulemaking, which has never been acted on or implemented, outlining the dangers of Keyless Fobs. NHTSA recognized that "driver[s] may not immediately know that the propulsion system has not been turned off" and drivers "may have died because of carbon monoxide poisoning from their vehicles."  ¶ 205.

[12] Since at least 2007, Toyota had knowledge of the need for Auto-Off, and worked on Auto-Off technology internally with remote-start vehicles in order to limit carbon monoxide emissions in pre-start situations, but Toyota opted not to implement Auto-Off in its Keyless Fob systems for the Affected Vehicles.  ¶¶ 222-25.

1   tells consumers little about what would happen if they remove the Keyless Fob from

2   the vehicle and leave with the engine still running.

3       Toyota's analogy to the *Gray* case falls flat.  *Gray* did not involve safety issues.

4   Furthermore, in *Gray*, the court concluded that the Prius' real-world MPG would be

5   readily and immediately observable by a layman in everyday driving conditions.  *See*

6   *id.* at *8-9.  In that context, the district court concluded that the plaintiffs had not

7   alleged any facts to show that Toyota was in a better position than consumers to know

8   the Prius' real-world MPG.  Here, however, Plaintiffs allege Toyota knew a lot more

9   about the defect and associated safety risks, including information that was not readily

10  available to the public.  Unlike vehicle fuel economy, the Defect in this case is *not*

11  immediately observable to consumers in everyday driving conditions.  As pled,

12  consumers only tend to learn of the Defect after leaving the vehicle with the Keyless

13  Fob, *while the vehicle is left running* (¶ 233): they would learn inadvertently by

14  experiencing the Defect first-hand.  *See Falk*, 496 F. Supp. 2d at 1096-97.

15      Furthermore, despite Toyota's contrary view, sporadic information on the

16  Internet or in other media about the dangers of Keyless Fob vehicles does not cancel

17  out Toyota's superior knowledge.  *See Asghari*, 42 F. Supp. 3d at 1327 n.74 ("Many

18  customers would not have performed an internet search before beginning a [product]

19  search.  Nor were they required to do so.") (quoting *Tait v. BSH Home Appliances*

20  *Corp.*, 2011 WL 3941387, at *2-3 (C.D. Cal. Aug. 31, 2011) and *Falk*, 496 F. Supp.

21  2d at 1096); *see also Unintended Acceleration MDL*, 754 F. Supp. 2d at 1192 ("While

22  prospective [Toyota] customers could have been tipped off to the possibility of

23  [sudden unintended acceleration] by researching past complaints filed with NHTSA,

24  many customers would not have performed such a search, nor would they be expected

25  to.").  "Plaintiffs have sufficiently alleged that Toyota knew significantly more about

26  the alleged [] defect than the limited information" available to the public.  *See id.*; *see*

27  *also In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 960 ("Even if the public

28  – and therefore Plaintiffs – were aware of some problems with [the in-vehicle-dash

control systems], that does not establish that either the public or Plaintiffs knew or should have known of the severity of the problems…."); *Elias II*, 2014 WL 493034, at *9 ("customers cannot 'be expected to seek facts which they h[ave] no way of knowing exist[]'") (quoting *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1227-28); *Hofmann v. Fifth Generation, Inc.*, 2015 WL 5440330, at *8-9 (S.D. Cal. Mar. 18, 2015) (information from a magazine article cannot be imputed to consumers).[13]  At most, the nature of information in the public domain "is a question of fact not properly resolved on a motion to dismiss."  *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1230 (N.D. Cal. 2014).

Finally, Toyota half-heartedly contends that the FAC does not establish Toyota had pre-sale knowledge of the Defect.  But unlike the cases cited by Toyota addressing undated customer complaints and unspecified testing data (*see*, *e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147-48 (9th Cir. 2012)), Plaintiffs identify several independent and timely sources of Toyota's pre-sale knowledge of the Defect (as described above).  These include, among other things, personal injury and wrongful death actions filed against Toyota, NHTSA publications, numerous NHTSA complaints, and Toyota's partial implementation of Auto-Off in remote start applications, *which pre-date* Plaintiffs' purchases or leases of the Affected Vehicles.

In sum, Plaintiffs adequately plead that Toyota has exclusive and/or superior knowledge of the Defect and associated safety risks.

### 3.  Toyota has a duty to disclose the lack of Auto-Off based on Toyota's concealment of the defect.

Automakers can actively conceal an alleged defect in a variety of ways, such as by withholding relevant facts (*see*, *e.g.*, *Ehrlich*, 801 F. Supp. 2d at 919); or correcting the defect in some but not all instances (*see*, *e.g.*, *id.*; *Marsikian*, 2009 WL 8379784, at

---

[13] *Herron v. Best Buy Co.*, 924 F. Supp. 2d 1161 (E.D. Cal. 2013) is distinguishable.  Unlike the case here, *Herron* did not involve a safety defect, and the complaint merely presented generalized allegations of exclusive knowledge without factual allegations to support it.  Moreover, the alleged defect in *Herron* was readily observable from daily use of the product.

1   *6); or denying "the existence of a defect or a fix" (*Corson v. Toyota Motor Sales,*

2   *U.S.A., Inc.*, 2013 WL 10068136, at *6 (C.D. Cal. July 18, 2013); *see also Asghari*, 42

3   F. Supp. 3d at 1330-31; *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1192).

4   According to the FAC, Toyota actively concealed the Defect in at least three ways:  (i)

5   quietly resolving personal injury and wrongful death suits behind confidential

6   settlement agreements; (ii) re-designing some but not all vehicle systems to avoid the

7   Defect (*e.g.*, remote-start systems); and (iii) denying that the Keyless Fob system

8   design was defective or could be fixed (as reflected in various NHTSA complaints).

9   ¶¶ 21, 34, 193-97, 200-01, 219-25, 228, 233.  Based on these allegations, Plaintiffs

10  sufficiently plead active concealment.

**D.   Plaintiffs Adequately Plead Claims Under Each Prong of California's Unfair Competition Law**

Plaintiffs state a claim under the 'fraudulent' and 'unfair' prongs of the UCL

because they sufficiently allege that Toyota failed to disclose material facts about a

significant safety defect, as set forth above.  Plaintiffs state a claim under the

'unlawful' prong of the UCL because Toyota's failure to disclose facts relating to an

unreasonable safety risk also violates the CLRA.  *See Asghari*, 42 F. Supp. 3d at 1330-

31; *see also Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1238

(C.D. Cal. 2011); *Marsikian*, 2009 WL 8379784, at *6.

**E.   Plaintiff Flannery Adequately Pleads a Claim for Relief Under Massachusetts Chapter 93A**

Massachusetts case law provides that where "there is no allegation that the

plaintiffs -- or indeed anyone else -- have suffered personal injury or property

damage," the plaintiffs must identify a legal standard that has not been met.  *See*

*Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 633 (2008).  But here, Plaintiffs do

allege that other persons have suffered personal injuries as a consequence of the

Defect.  This amply supports a claim under Massachusetts Chapter 93A.

**F.    The Economic Loss Rule Does Not Apply**

"The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). In seeking dismissal of Plaintiffs' two tort claims, Toyota argues that Plaintiffs merely seek tort damages for economic losses stemming from a breach of their purchase contracts. MTD at 17-18. Not so. The claims at issue are based on a breach of duty that is independent of any contractual promise.

The economic loss rule does not bar tort claims when the challenged conduct violates a legal duty independent of the contract. *See Robinson Helicopter Co.*, 34 Cal. 4th at 989-90; *see also NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013). "One example of this is where the contract was fraudulently induced, in which case the injured party can assert both contract and tort claims." *Sherwin-Williams Co. v. JJT, Inc.*, 2014 WL 2587483, at *6 (S.D. Cal. June 10, 2014). In this regard, material omissions are not subject to the economic loss rule, at least when they are alleged to be *intentional* rather than *negligent*. *See NuCal Foods, Inc.*, 918 F. Supp. 2d at 1031-32. Plaintiffs squarely allege that Toyota knowingly and deceptively induced them to purchase certain vehicles without full disclosure of a safety defect, and but for Toyota's intentional non-disclosure, they would not have purchased those vehicles. ¶¶ 279, 283-85. The economic loss rule cannot apply here, since the claims arise from a duty to disclose that is independent of any contractual promise.

**G.    Plaintiffs Have Adequately Alleged Breaches of the Implied Warranty of Merchantability Under Massachusetts and New Jersey Law**

Under Massachusetts law, an auto manufacturer has breached the implied warranty of merchantability if the vehicle is unfit for "its ordinary purpose of providing safe, reliable transportation." *Finigan-Mirisola v. DaimlerChrysler Corp.*, 869 N.E.2d 632, at *1 (Mass. App. Ct. 2007). Under New Jersey law, an auto

manufacturer breaches the implied warranty of merchantability when a vehicle is "defective or not fit for the ordinary purpose for which it was intended." *Glass v. BMW of N. Am., LLC*, 2011 WL 6887721, at *13 (D.N.J. Dec. 29, 2011). At least one court within this district has explained that a vehicle is not necessarily fit for its ordinary purposes "merely because [it] provides transportation from point A to point B." *Keegan*, 838 F. Supp. 2d at 946.

The question of whether a vehicle is fit for its ordinary purposes is necessarily a factual determination inappropriate for this stage of the litigation. Because the Court "must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party," *In re MyFord Touch Consumer Litigation*, 46 F. Supp. 3d at 950, it is premature to dismiss Plaintiffs' implied warranty claims. Plaintiffs allege that the Affected Vehicles present deadly risks of carbon monoxide poisoning without Auto-Off, and any determination as to whether vehicles with a life-threatening Defect violate the implied warranty must be left to a trier of fact.

Toyota's remaining arguments concerning the Massachusetts implied warranty claim are without merit. *First*, while the implied warranty claim and the consumer protection claim under Chapter 93A "survive or fail under the same analysis," *Iannacchino*, 451 Mass. at 634-35, both of those claims survive for the reasons explained *supra* in Section E. *Second*, the implied warranty claim is not barred by the four-year statute of limitation because Toyota fraudulently concealed the Defect, *see* ¶¶ 229-30, thereby tolling the applicable limitations period under Mass. Gen. Laws c. 260 § 12. *See Genovesi v. Nelson*, 5 N.E.3d 571, 577 (Mass. App. Ct. 2014) (applying relevant tolling provision for fraudulent concealment to extend ordinary statute of limitations period).

**H.      Plaintiffs' Claims for Unjust Enrichment Are Properly Pled in the Alternative Under California, Massachusetts, and New Jersey Law**

The Ninth Circuit recently held that a claim for unjust enrichment under California law should not be dismissed just because it is not a "standalone cause of

action." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). The court's "unambiguous" decision in *Astiana* has "settled the long-standing question of whether a court may dismiss a claim for unjust enrichment as merely duplicative of other statutory or tort claims." *Trazo v. Nestlé USA, Inc.*, 113 F. Supp. 3d 1047, 1049 (N.D. Cal. 2015); *cf. Unintended Acceleration MDL*, 754 F. Supp. 2d at 1193-94 (decided before *Astiana*); *Rhynes v. Stryker Corp.*, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011) (same); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011) (same); *Maloney v. Indymac Mortg. Servs.*, 2014 WL 6453777, at *7 (C.D. Cal. Nov. 17, 2014) (same).

Similarly, federal courts applying Massachusetts law have held that a plaintiff can plead unjust enrichment in the alternative to other causes of action, even though the damages are "mutually exclusive." *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012); *see also Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 294-95 (D. Mass. 2009) (stating that Federal Rule of Civil Procedure 8(d) "permits [p]laintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if [p]laintiffs only can recover under one of these theories"). Toyota's reliance on *Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010), and *Fox v. F & J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 589 (1996), is misplaced because those cases were not decided on motions to dismiss, but on a motion for summary judgment (*Fernandes*) and on a motion for judgment notwithstanding the trial verdict (*Fox*). Tellingly, Toyota also relies on *Szulik v. State Street Bank & Trust Co.*, 935 F. Supp. 2d 240, 274 (D. Mass. 2013), where the district court expressly held under Massachusetts law that "[a]lthough the existence of a contractual relationship may ultimately bar the unjust enrichment claim, it does not warrant the dismissal of that claim" on a motion to dismiss.

Under New Jersey law, an "unjust enrichment claim may be sustained independently as an alternative theory of recovery." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 505 (D.N.J. 2009). Even when there may be an adequate

1  remedy at law by way of express contract, plaintiffs "are clearly permitted to plead

2  alternative theories of recovery." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517,

3  544 (D.N.J. 2004). As a result, federal courts in New Jersey have rejected attempts to

4  dismiss unjust enrichment claims at an early stage of the litigation.

5  **I.    Plaintiffs' Request for Injunctive Relief Is Not Barred by Preemption or Primary Jurisdiction**

6  
7          In the *Unintended Acceleration MDL*, the Court rejected Toyota's argument that

8  claims for injunctive relief, including a recall, must be dismissed by application of

9  conflict preemption and the doctrine of primary jurisdiction. Yet, Toyota unabashedly

10  makes precisely the same arguments here without even referencing the Court's

11  decision in the *Unintended Acceleration MDL*. For the reasons articulated in that

12  litigation, the Court should once again reject Toyota's argument.

13      **1.    Plaintiffs' request for injunctive relief is not barred by conflict preemption.**

14          Toyota's argument that Plaintiffs' requested relief is preempted by the Safety

15  Act goes nowhere, just as it did in the *Unintended Acceleration MDL*. Conflict

16  preemption only exists when "state law conflicts with federal law, either … because it

17  [i]s impossible to comply with both laws or … because state law stands as an obstacle

18  to accomplishing the purposes of federal law." *Unintended Acceleration MDL*, 754 F.

19  Supp. 2d at 1195. Importantly, there is a presumption against conflict preemption "in

20  areas traditionally regulated by the States." *Id.* at 1196. California federal courts have

21  consistently held that motor vehicle safety "is an area of law traditionally regulated by

22  the states," and that the presumption against preemption applies to vehicle defect class

23  actions. *Id.*; *see also Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 958 (N.D.

24  Cal. 2004) ("Motor vehicle safety is an area of traditional State police power.").

25          Because there is a presumption against preemption in this case, Toyota "bears

26  the burden of showing that it was Congress' clear and manifest intent to preempt State

27  law." *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1197. As such, Toyota must

28  establish that there is an "an actual conflict" between Plaintiffs' requested relief and

---

the Safety Act.  It is not enough that the relief sought "<u>might</u> conflict with some future action of NHTSA as it investigates the alleged defect[s] at issue." *Id.* at 1198-1200. "[T]o constitute an actual conflict, the state law at issue must conflict with the intent of Congress in a specific and concrete way." *Id.* at 1198.

In the *Unintended Acceleration MDL*, Judge Selna rejected the argument advanced by Toyota here that the requested relief *may* conflict with the Safety Act. Judge Selna emphasized that a "real and substantial possibility of conflict is insufficient to warrant dismissal on preemption grounds." *Id.*  So too here.  Toyota has failed to bear its burden to establish that Plaintiffs' requested injunctive relief actually conflicts with the Safety Act.

Toyota's reliance on *In re Bridgestone/Firestone Inc., ATX, ATX II & Wilderness Tires Products Liability Litigation ("Bridgestone")*, 153 F. Supp. 2d 935 (S.D. Ind. 2001), and the unpublished decision in *Lilly v. Ford*, 2002 WL 84603 (N.D. Ill. Jan. 22, 2002), is just as futile as it was in the *Unintended Acceleration MDL*, where Judge Selna criticized those courts for their overly broad application of conflict preemption.[14]   *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1196, 1199. Whereas *Bridgestone* and *Lilly* viewed the relevant area of law for conflict preemption analysis as recalls, Judge Selna emphasized that "[a] recall is a remedy rather than a substantive field of regulation." *Id.* at 1196.  As such, "recalls do not provide the relevant area of law," and the courts in *Bridgestone* and *Lilly* erred by failing to apply the presumption against preemption.  *See id.*

The district court in *Chamberlan* similarly criticized the reasoning of *Bridgestone* and *Lilly*.  314 F. Supp. 2d at 965, 967.  The *Chamberlan* court viewed both decisions as "unpersuasive," instead concluding just as Judge Selna did that there is a presumption against preemption in vehicle defect class actions and that the

---

[14] Toyota also relies on the unpublished state trial court decision in *Coker v. DaimlerChrysler Corp.*, 2004 WL 32676 (N.C. Super. Ct. Jan. 5, 2004), *aff'd*, 172 N.C. App. 386 (N.C. Ct. App. 2005), which was rejected by this Court in *Marsikian*, 2009 WL 8379784, at *9 n.3.

defendant there failed to overcome the presumption without evidence of an "actual conflict." *Id.*; *see also Marsikian*, 2009 WL 8379784, at *9 n.3 (concluding that defendant had "not shown that preemption doctrine would bar a recall remedy").

## 2. Plaintiffs' requested relief is also not barred by the doctrine of primary jurisdiction.

Toyota's reliance on primary jurisdiction, a doctrine almost never invoked by courts in motor vehicle class actions, despite auto manufacturers' best efforts, is equally unavailing. "Under this doctrine, [c]ourts may find that an administrative agency has primary jurisdiction over a judicially cognizable claim where enforcement of the claim requires the resolution of issues, which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Unintended Acceleration MDL*, 754 F. Supp. 2d at 1199.

In the *Unintended Acceleration MDL*, Judge Selna rejected the primary jurisdiction argument advanced by Toyota here, concluding that the claims, just like Plaintiffs' claims in this litigation, did "not arise under the Safety Act or NHTSA regulations" and were instead "based on California statutes … and general contract and tort principles." *Id.* at 1200. The claims were therefore "within the conventional competence of the courts." *Id.*; *see also Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 531 (S.D. W. Va. 2014) (holding that court was "well-equipped to handle" claims based upon breach of warranty and state law causes of action); *Kent v. DaimlerChrysler Corp.*, 200 F. Supp. 2d 1208, 1219 (N.D. Cal. 2002) (concluding that "the state law claims brought by [p]laintiffs are within the conventional competence of the courts").

The *Marsikian* court reached the same conclusion, explaining that the plaintiffs' claims did not arise "under any statutes that [] NHTSA enforces"; rather, the claims "primarily rest[ed] on contract and tort principles." 2009 WL 8379784, at *9. As a result, the court rejected the defendant's primary jurisdiction argument since it failed

to "specify any particular issues within [] NHTSA's special competence that must be resolved in this action." *Id.*

Toyota's sole case supporting its argument is a fourteen-year-old unpublished decision from the Pennsylvania Court of Common Pleas,[15] *Solarz v. DaimlerChrysler Corp.*, 2002 WL 452218, at *3-4 (Pa. Com. Pl. Mar. 13, 2002), which has only been cited once within the Ninth Circuit, in a case that declined to apply primary jurisdiction in an auto defect class action. *See Philips v. Ford Motor Co.*, 2016 WL 693283, at *12 (N.D. Cal. Feb. 22, 2016).

Plaintiffs here do not challenge any NHTSA regulation, and the core claim – that Plaintiffs are entitled to recover economic and injunctive relief for Toyota's failure to disclose the Defect – is not the type of "unusual technical or policy expertise" requiring agency intervention. *See Guido v. L'Oreal, USA, Inc.*, 2013 WL 454861, at *6 (C.D. Cal. Feb. 6, 2013) (interpreting *Clark v. Time Warner Cable*, 523 F.3d 1110 (9th Cir. 2008), as only applicable to highly technical issues that require agency expertise and consideration). For the reasons articulated by Judge Selna in rejecting Toyota's argument in the *Unintended Acceleration MDL*, the same argument here should be rejected.

## IV.   CONCLUSION

For the reasons above, the Court should deny Toyota's Motion to Dismiss.

---

[15] Toyota's only remaining support for this argument is a letter submitted by NHTSA in a separate litigation where vehicle recalls were already under way. *See* MTD at 24 (citing *In re: Takata Airbag Product Liability Litigation*).

1     Dated:  April 18, 2016           HAGENS BERMAN SOBOL SHAPIRO LLP

2

3                                   By */s/ Steve W. Berman*
                                  Steve W. Berman (*pro hac vice*)

4                                   HAGENS BERMAN SOBOL SHAPIRO LLP
                                  1918 Eighth Avenue, Suite 3300

5                                   Seattle, WA 98101
                                  Telephone: (206) 623-7292

6                                   Facsimile: (206) 623-0594
                                  steve@hbsslaw.com

7                                   Lee M. Gordon (SBN 174168)

8                                   Elaine T. Byszewski (SBN 222304)
                                  HAGENS BERMAN SOBOL SHAPIRO LLP

9                                   301 N. Lake Avenue, Suite 203
                                  Pasadena, CA 91101

10                                 Telephone: (213) 330-7150
                                Facsimile: (213) 330-7152

11                                 lee@hbsslaw.com
                                elaine@hbsslaw.com

12                                 LABATON SUCHAROW LLP

13                                 Martis Ann Alex (SBN 77903)

14                                 Daniel R. Leathers (*pro hac vice*)
                                Brian R. Morrison (*pro hac vice*)

15                                 LABATON SUCHAROW LLP
                                140 Broadway

16                                 New York, NY 10005
                                Telephone: (212) 907-0700

17                                 Facsimile: (212) 818-0477
                                malex@labaton.com

18                                 dleathers@labaton.com
                                bmorrison@labaton.com

19                                 *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on April 18, 2016, I electronically filed the foregoing

3

document using the CM/ECF system which will send notification of such filing to the

4

e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail

5

Notice List.

6

7

                        */s/ Steve W. Berman*
                       STEVE W. BERMAN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28